*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A25-1015**

State of Minnesota,
Respondent,

vs.

Darrnell Maurice Samir Cooper,
Appellant.

**Filed July 6, 2026
Affirmed
Schmidt, Judge**

Hennepin County District Court
File No. 27-CR-24-24378

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Mary F. Moriarty, Hennepin County Attorney, Shannon M. Harmon, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Julie L. Nelson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Smith, Tracy M., Presiding Judge; Schmidt, Judge; and Beane, Judge.

**NONPRECEDENTIAL OPINION**

**SCHMIDT**, Judge

Appellant Darrnell Maurice Samir Cooper argues that he is entitled to a new trial after being convicted of first-degree burglary, second-degree assault, and violation of a no-contact order. He raises several more issues in a pro se supplemental brief. We affirm.

# FACTS

S.B. had been in a romantic relationship with Cooper. After their relationship turned tumultuous, S.B. called the police several times to report Cooper for harassing and abusing her. S.B. obtained a domestic-abuse no-contact order against Cooper.

S.B. later ran into Cooper and his brother at a bar. After Cooper accused S.B. of trying to sleep with his brother, S.B. left. S.B. and Cooper exchanged heated text messages between 2:00 a.m. and 4:00 a.m.

The next morning, Cooper approached S.B. as she was walking out of her apartment building and told her to go back inside. S.B. went back inside and Cooper hit S.B. in the face on the way to the elevator.

Once inside the apartment that S.B. shared with her mother, Cooper hit S.B. twice in the face, once with an object. S.B. told Cooper to stop, but he responded by striking S.B. hard in the face with a full can of beer. The two began to physically fight. Cooper picked up a knife and his arm was cut during the struggle. S.B.'s left eye was also cut and blood ran down her face. S.B. got ahold of the knife and swung it at Cooper. Cooper continued to hit and kick S.B., eventually using a cast-iron skillet as a weapon.

S.B. yelled, hoping that a neighbor or her mother would help. S.B. also tried calling 911 on her cell phone, but Cooper knocked the phone out of her hand. S.B. crawled into her mother's room, grabbed the cordless phone, went into the closet, and called 911.

Police officers responded and saw fresh blood throughout the apartment, found a knife on a table, and located a cast-iron skillet. S.B. had dried blood on her hair, face, hands, and clothes.

After police arrived, S.B. went to the hospital. Hospital records detailed the extent of S.B.'s injuries, including two black eyes, a cut over her left eye, bruises on her body, a lump and a cut on the back of her head, and pain in her hip and shoulder.

Respondent State of Minnesota charged Cooper with two counts of first-degree burglary, one count of second-degree assault, and two counts of violating no-contact orders.[1] Before trial, the state noticed its intent to introduce three instances of relationship evidence.[2] The first, from April 2024, involved Cooper choking S.B. and throwing her to the floor. The second, from August 2024, involved Cooper grabbing S.B. by the throat, slamming her onto the bed, and Cooper telling S.B. he was going to kill her. The third, which ran from Cooper's release from jail in October 2024 to the night of the offense, involved S.B. allowing Cooper to contact her as a means to manage his volatile behavior. Over Cooper's objection, the district court allowed the state to present the evidence.

At trial, the state presented the relationship evidence through S.B.'s testimony. Before the prosecutor elicited the testimony, the district court gave the jury limiting instructions on the appropriate use of the relationship evidence. The court also gave the limiting instruction before the jury deliberated. The jury found Cooper guilty on all counts.

Cooper moved for a judgment of acquittal and a new trial. The district court denied Cooper's motions. The district court sentenced Cooper to 69 months in prison on the first-degree burglary conviction. Cooper appeals.

---

[1] The state later dismissed one of the no-contact order charges.

[2] "Relationship evidence" generally refers to evidence admitted under Minnesota Statutes section 634.20 (2024). *See, e.g.*, *State v. Bell*, 719 N.W.2d 635, 638 n.4 (Minn. 2006).

**DECISION**

**I. Cooper is not entitled to a new trial.**

Cooper argues he is entitled to a new trial because the district court improperly admitted relationship evidence. We review a district court's evidentiary rulings for an abuse of discretion. *State v. McCoy*, 682 N.W.2d 153, 161 (Minn. 2004). "A district court abuses its discretion when its decision is based on an erroneous view of the law or is against logic and the facts in the record." *State v. Vangrevenhof*, 941 N.W.2d 730, 736 (Minn. 2020) (quotation omitted).

Generally, evidence of prior wrongful conduct unrelated to the crime for which a person is on trial is inadmissible. *See* Minn. R. Evid. 404(b). An exception to this rule permits the admission of "[e]vidence of domestic conduct by the accused against the victim of domestic conduct, or against other family or household members[.]" Minn. Stat. § 634.20. *See also McCoy*, 682 N.W.2d at 161 (adopting section 634.20 as a rule of evidence). This "relationship evidence" may be admitted under section 634.20, but the district court must also consider, as relevant here, whether "the probative value is substantially outweighed by the danger of unfair prejudice[.]" Minn. Stat. § 634.20.

**A. The district court properly weighed the probative value of the relationship evidence.**

Cooper argues that the district court abused its discretion by allowing the state to introduce the relationship evidence because it had little probative value, significant potential for prejudice, and constituted illegitimate propensity evidence. We disagree.

4

In a domestic-abuse trial, a district court may admit "evidence of prior conduct between the accused and the alleged victim . . . to illuminate the history of the relationship, that is, to put the crime charged in the context of the relationship between the two." *State v. Zinski*, 927 N.W.2d 272, 278 (Minn. 2019). The district court must ensure that "the probative value [of the evidence] is substantially outweighed by the danger of unfair prejudice." *Id.* at 273 n.1. When weighing the probative value against the potential prejudice, the Minnesota Supreme Court has held that "unfair prejudice is not merely damaging evidence, even severely damaging evidence; rather, unfair prejudice is evidence that persuades by illegitimate means, giving one party an unfair advantage." *Bell*, 719 N.W.2d at 641 (quotation omitted).

The district court did not abuse its discretion in determining that the relationship evidence had significant probative value because the evidence "illuminate[d] the history of the relationship" and "assist[ed] the jury in assessing witness credibility." *State v. Matthews*, 779 N.W.2d 543, 549 (Minn. 2010). (citation omitted). The district court found that the April incident and the August incident involved domestic conduct similar to the charged offense. The district court reasoned that both incidents were "highly probative of the complexities of the relationship history between victim and [Cooper] prior to the instant case" and that "[t]his evidence explains what might otherwise be counter intuitive behavior." The district court further reasoned that the third piece of relationship evidence contextualized how the April incident and August incident affected S.B.'s behavior toward Cooper leading up to the October incident.

**B.    The district court properly considered the potential for prejudice.**

The district court also considered the potential for prejudice. To minimize the prejudice, the district court gave the jury limiting instructions on the appropriate use of the evidence when the evidence was introduced and again during the final jury instructions. "A district court's limiting instruction lessens the probability of undue weight being given by the jury to the evidence." *State v. Ware*, 856 N.W.2d 719, 729 (Minn. App. 2014) (quotation omitted). And we presume that a jury follows the district court's instructions. *State v. Courtney*, 696 N.W2d 73, 84 (Minn. 2005).

The district court did not abuse its discretion in admitting the relationship evidence and the limiting instructions alleviated any concerns about the jury misusing the evidence.

**II.    Cooper's pro se brief does not raise meritorious arguments.**

Cooper raises numerous issues in a supplemental pro se appellate brief. We address his arguments in turn.

**A.    Cooper's ineffective-assistance-of-counsel argument fails.**

Cooper argues that his defense counsel was ineffective due to how his defense counsel conducted examination of two of the state's witnesses and due to a comment that defense counsel made during their opening statements. We disagree.

"The Sixth Amendment to the United States Constitution and Article I, section 6, of the Minnesota Constitution guarantee a criminal defendant 'the right to the effective assistance of counsel.'" *Taylor v. State*, 887 N.W.2d 821, 823 (Minn. 2016) (quoting *Strickland v. Washington*, 466 U.S. 668, 686 (1984)). Ineffective-assistance-of-counsel claims are typically asserted in a postconviction petition for relief, rather than on direct

6

appeal, because the district court may hold an evidentiary hearing to obtain additional facts to assess the claim. *See State v. Gustafson*, 610 N.W.2d 314, 321 (Minn. 2000) (citation omitted). If "a claim of ineffective assistance of trial counsel can be determined on the basis of the trial record, the claim must be brought on direct appeal or it is *Knaffla*-barred." *Andersen v. State*, 830 N.W.2d 1, 10 (Minn. 2013) (citations omitted).

To prevail on his ineffective-assistance-of-counsel argument, Cooper must show that (1) his counsel's performance "fell below an objective standard of reasonableness" and (2) but for counsel's unreasonable performance, there is a reasonable probability that the result of the proceeding would have been different. *State v. Vang*, 847 N.W.2d 248, 266 (Minn. 2014) (applying *Strickland*). If appellant fails to establish one of the *Strickland* prongs, then the claim fails and we need not address the other prong. *Id.*

We generally will not review an ineffective-assistance-of-counsel claim if it is based on the attorney's trial strategy, which is "within the discretion of trial counsel." *Leake v. State*, 737 N.W.2d 531, 536 (Minn. 2007). The appellant bears the burden to overcome the "strong presumption that counsel's performance fell within a wide range of reasonable assistance." *Gail v. State*, 732 N.W.2d 243, 248 (Minn. 2007) (citation omitted); *see Strickland*, 466 U.S. at 689 (noting judicial review is "highly deferential" to counsel's performance).

Cooper's argument about his defense counsel ineffectively questioning two of the state's witnesses fails. Whether and how to conduct cross-examination constitutes trial strategy, which we will not second guess. *Leake*, 737 N.W.2d at 536; *State v. Rosillo*, 281 N.W.2d 877, 879 (Minn. 1979); *State v. Brocks*, 587 N.W.2d 37 (Minn. 1998).

7

Cooper's argument about the defense attorney's opening statement similarly fails. Cooper cites to his counsel's opening statement: "the evidence is also going to indicate Mr. Cooper acted in self-defense. He picked up a weapon when he was attacked with a knife. He picked up a pan or took the knife away from her." Cooper now argues that he intended to show the jury that he never picked up a weapon, which was undermined by his attorney's opening statement. But counsel's opening statement aligned with Cooper's testimony:

> I took the knife out of her hands and I tossed it behind me. And then I stayed there and I watched what she did. She didn't get up and go for the knife or anything, so I let her go. I grabbed the knife, I put it in the front room.

It is objectively reasonable for Cooper's counsel to make a statement that is consistent with Cooper's own testimony later in the trial. Since the ineffective-assistance arguments fail on the first prong, we need not address the second prong. *Vang*, 847 N.W.2d at 266. Cooper's counsel was not ineffective based upon the opening statement.

### B. Cooper's juror-misconduct argument presents no grounds for reversal.

Cooper argues that we must reverse for a new trial because of the "strong possibility of coercion of one or more jurors or other misconduct and resulting rush to verdict." We interpret Cooper's argument for a new trial as a request for a *Schwartz* hearing.[3]

Before Cooper may receive a *Schwartz* hearing, he must "first establishes a prima facie case of juror misconduct or bias." *Pulczinski v. State*, 972 N.W.2d 347, 361 (Minn.

---

[3] A *Schwartz* hearing allows a district court to investigate alleged juror misconduct. *Schwartz v. Minneapolis Suburban Bus Co.*, 104 N.W.2d 301 (Minn. 1960).

2022). Here, Cooper does not point to any evidence in the record to support his assertion that any juror was coerced or engaged in misconduct. Cooper's juror-misconduct argument relies on speculation about the timing of the jury sending a question to the district court occurring on the same day that the jury returned the verdict. But an appellant is not entitled to a *Schwartz* hearing on the basis of "wholly speculative" allegations of misconduct. *State v. Martin*, 614 N.W.2d 214, 226 (Minn. 2000). Cooper has not established that he is entitled to relief on this issue.[4]

**Affirmed.**

---

[4] Cooper's pro se supplemental brief raises other arguments about the admission of evidence and cumulative errors. But Cooper fails to provide citation to the record or legal authority. Such claims are forfeited and "will not [be] considered unless prejudicial error is obvious." *State v. Montano*, 956 N.W.2d 643, 650-51 (Minn. 2021) (citation omitted). Since our careful review revealed no obvious prejudicial error, the arguments are forfeited.